C-570-953
Remand
Slip Op. 22-157
POR:  1/01/2017 – 12/31/2017
Public Document
E&C/OIX:  SB/TKS

*Yama Ribbons and Bows Co., v. United States*,
Court No. 20-00059, Slip Op. 22-157 (CIT December 23, 2022)
Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.  SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *Yama Ribbons and Bows Co., v. United States*, Court No. 20-00059, Slip Op. 22-157 (CIT December 23, 2022) (*Remand Order*).  This action arises out of the final results in *Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review;* 2017, 85 FR 10653 (February 25, 2020) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).  The sole issue in this remand is Commerce's application and decision to use a 10.54 percent subsidy rate as adverse facts available (AFA) for the Export Buyer's Credit program.  As discussed below, pursuant to the Court's order, on remand, Commerce has reexamined its application of the countervailing duty (CVD) AFA hierarchy and its decision to use the 10.54 percent subsidy rate as AFA for the Export Buyer's Credit program.  Consistent with the Court's order, Commerce has provided a more fulsome explanation of its CVD AFA hierarchy, its application of the hierarchy in this case, and why the 10.54 percent subsidy rate selected as AFA for the Export Buyer's Credit

program is both reasonable and appropriate. As a result, for these final results of redetermination, Commerce made no changes to Yama Ribbons and Bows Co.'s (Yama's) overall subsidy rate presented in the *Final Results*.

## II. BACKGROUND

On February 25, 2020, Commerce published its *Final Results*.[1] In the *Final Results*, we found that the use of AFA was warranted in determining the countervailability of the Export Buyer's Credit program because the Government of the People's Republic of China (China) (GOC) failed to respond to Commerce's questionnaire for this period of review and informed us that it would not participate in this review.[2] Thus, the GOC prevented Commerce from analyzing the function of this program and failed to cooperate to the best of its ability in response to our information requests. We determined, as AFA, that this program met the financial contribution and specificity requirements of the Tariff Act of 1930, as amended (the Act). Further, we determined that, without the necessary information we requested from the GOC, we were unable to make a determination of non-use based on only the information Yama provided. Therefore, we determined as AFA that Yama used the Export Buyer's Credit program, and consistent with our CVD AFA hierarchy, we selected the highest calculated rate for a similar program as the AFA rate for this program (*i.e.*, 10.54 percent), in accordance with section 776(d) of the Act and our established practice.[3]

Yama challenged Commerce's finding in the *Final Results* that it used and benefited from the Export Buyer's Credit program based on AFA. In the alternative, Yama challenged Commerce's selection of the 10.54 percent subsidy rate as AFA for this program, which it

---

[1] *See Final Results*.
[2] *See Final Results* IDM at Comment 2.
[3] *Id*.

claimed was "extremely adverse, punitive, and not related to exports or this industry or connected to the Export Buyers Credit program."[4]  On December 23, 2022, the Court sustained, in part, and remanded, in part, the *Final Results*, finding that:  (1) Commerce was within its authority in using an adverse inference that Yama benefitted from the Export Buyer's Credit program; but (2) the record did not contain sufficient evidence to support the application of the 10.54 percent subsidy rate Commerce selected as AFA for the Export Buyer's Credit program.  On remand, the Court instructed Commerce to:  (1) reconsider its use of the 10.54 percent rate as AFA; and (2) explain why the rate it decides to use is appropriate under section 776(d) of the Act, given that an unreasonably high AFA rate could unduly prejudice Yama, an interested party that was fully cooperative during the review.[5]

### III.    ANALYSIS

Pursuant to the Court's *Remand Order*, we reconsidered our selection of the 10.54 percent subsidy rate selected as the AFA rate for the Export Buyer's Credit program.  Upon reexamination of the record of the underlying administrative review, we note that we incorrectly described the steps of Commerce's CVD AFA hierarchy, which we used to determine the appropriate AFA rate for the Export Buyer's Credit program in the *Final Results*, as having three steps.[6]  However, Commerce's CVD AFA hierarchy is more accurately described as having four steps:

> Under the first step of Commerce's CVD AFA hierarchy for administrative reviews, Commerce applies the highest non-de minimis rate calculated for the identical program in any segment of the same proceeding. If there is no identical program match within the same proceeding, or if the rate is de minimis, under step two of the hierarchy, Commerce applies the highest non-de minimis rate calculated for a similar program within any segment of the same proceeding. If there is no non-de minimis rate calculated for a similar program within the same proceeding,

---

[4] *See Remand Order* at 16.
[5] *Id*. at 18-19.
[6] *See Final Results* IDM at Comment 2.

under step three of the hierarchy, Commerce applies the highest non-de minimis rate calculated for an identical or similar program in another CVD proceeding involving the same country. Finally, if there is no non-de minimis rate calculated for an identical or similar program in another CVD proceeding involving the same country, under step four, Commerce applies the highest calculated rate for any program from the same country that the industry subject to the review could have used.[7]

Pursuant to step three of Commerce's four-step hierarchy, if there is no non-*de minimis* rate calculated for a similar program within the same proceeding, Commerce applies the highest non-*de minimis* rate calculated for an identical or similar program in another CVD proceeding involving the same country.  Thus, as discussed in the *Final Results*, because we had not previously calculated an above-*de minimis* rate for the Export Buyer's Credit program in this proceeding, and we found no similar/comparable program within this proceeding without a de minimis rate, consistent with the hierarchy, we relied on the rate determined for a comparable program in another CVD proceeding involving China.  We determined that the highest calculated rate for a comparable lending program is the 10.54 percent rate calculated for the preferential policy lending program in *Coated Paper from China*.[8]  As set forth above, our selection of the highest calculated rate for a comparable lending program as AFA for the Export Buyer's Credit program is more accurately described as the third step of Commerce's CVD AFA hierarchy. Moreover, under step four of the four-step hierarchy, Commerce applies the highest calculated rate for *any* program – regardless of whether it is similar to the program at issue – from the same

---

[7] *See, e.g.*, *Multilayered Wood Flooring from the People's Republic of China:  Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review*; 2020, 87 FR 78644 (December 22, 2022), and accompanying Preliminary Decision Memorandum at 32; *see also Chlorinated Isocyanurates from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review*; 2016, 84 FR 37627 (August 1, 2019), and accompanying IDM at Comment 2; and *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review, and Partial Rescission of Countervailing Duty Administrative Review; 2014*, 82 FR 32678 (July 17, 2017), and accompanying IDM at Comment 2.

[8] *See Certain Coated Paper Suitable for High-Quality Print Graphics Using Sheet-Fed Presses from the People's Republic of China:  Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 FR 70201 (November 17, 2010) (*Coated Paper from China*) (revised rate for "Preferential Lending to the Coated Paper Industry" program).

country that the industry subject to the review could have used. Based on this description of our CVD AFA hierarchy, only the fourth step requires that Commerce use a program available to the industry in the proceeding. Therefore, because we did not select the 10.54 percent rate pursuant to the fourth step of the hierarchy, Commerce has not considered whether this program is available to the narrow woven ribbons with woven selvedge (narrow woven ribbons) industry in China.

In selecting the 10.54 percent rate under the third step of our four-step hierarchy and as discussed in the *Final Results*, we determined that the preferential policy lending program in *Coated Paper from China* is similar to the Export Buyer's Credit program.[9] Commerce determines a lending program to be similar to the Export Buyer's Credit program based on the treatment of the benefit because the credits function as short-term or medium-term loans.[10]

Additionally, in *Changzhou Trina 2018*, this Court recognized that section 776(d)(1)(A) of the Act does not require Commerce to select the most similar program when selecting among subsidy rates based on facts otherwise available with an adverse inference.[11] Rather, the plain text of the Act merely requires Commerce to select a *similar* program.[12]

We also conclude that the 10.54 percent AFA rate is appropriate, notwithstanding Yama's cooperation during the review, pursuant to our hierarchy and in accordance with section 776(d) of the Act. Section 776(d)(2) of the Act states that Commerce, when selecting among possible AFA rates, may apply "the highest such rate … based on the evaluation by the administering authority of the situation that resulted in the administering authority using an

---

[9] *See Final Results* IDM at Comment 2.
[10] *Id*.
[11] *See Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1328-29 (CIT 2018) (*Changzhou Trina 2018*) (upholding Commerce's selection of an AFA rate from a sufficiently similar program from an earlier administrative review and holding that Commerce needed not use plaintiff's proffered Export Seller's Credit program rate to calculate an AFA rate for the Export Buyer's Credit program) (emphasis added).
[12] *Id*. (emphasis added).

adverse inference in selecting among the facts otherwise available." Thus, we interpret the Act to mean that Commerce may apply the highest rate derived from its CVD hierarchy to a respondent unless, after an evaluation of the situation that resulted in the use of AFA, Commerce determines that the situation warrants a rate different than the rate derived from the hierarchy be applied.

As explained above and affirmed by this Court, the GOC's lack of cooperation warrants the application of AFA for the Export Buyer's Credit program. In evaluating the situation that resulted in the use of AFA, namely that the GOC's failure to provide a period-specific response prevented Commerce from analyzing the function of the Export Buyer's Credit program or asking further questions regarding the program,[13] we find no basis to determine that this situation warrants the application of a different rate than that derived from our hierarchy.

We further find the rate of 10.54 percent does not unreasonably penalize Yama as a cooperative respondent. The GOC's failure to cooperate in this case is a legitimate basis to apply an adverse rate that, nonetheless, affects a cooperating respondent, as the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held in *Fine Furniture*:

> In the present case, *Fine Furniture* is a company within the country of China, benefitting directly from subsidies the government of China may be providing, even if not intending to use such subsidy for anticompetitive purposes. Therefore, a remedy that collaterally reaches Fine Furniture has the potential to encourage the government of China to cooperate so as not to hurt its overall industry …
>
> Although it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.[14]

---

[13] *See Final Results* IDM at Comment 2.
[14] *See Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014) (*Fine Furniture*).

In this review, Commerce also applied AFA to the Export Buyer's Credit program because of the GOC's failure to provide requested information, as was the case in *Fine Furniture*. As a result, because Commerce appropriately applied its CVD AFA hierarchy to select the 10.54 percent rate for the Export Buyer's Credit program in accordance with section 776(d)(1)(A) of the Act, we continue to find that this rate is reasonable to use as AFA and apply to Yama.

IV.  **INTERESED PARTY COMMENTS**

On January 25, 2023, Commerce released the Draft Results of Redetermination to all interested parties, and invited parties to comment.[15] On January 31, 2023, we received the following comments from Yama:[16]

- Commerce did not comply with the Court's *Remand Order* in its Draft Results of Redetermination.
- Despite the Court's instructions, Commerce has not adequately explained why the 10.54 percent AFA rate is appropriate here, where an unreasonably high rate could unduly prejudice Yama, as the interested party that was fully cooperative during the review. Instead, Commerce applied essentially the same rationale it used previously to justify the use of the AFA rate.
- Commerce did not justify the 10.54 percent AFA rate with record evidence, in accordance with the Court's instructions.
- Commerce does not cite any record evidence demonstrating that the preferential policy lending program is similar to the Export Buyer's Credit program, ignoring the Court's explicit instructions.[17]

**Commerce's Position:**

We disagree with Yama that Commerce did not comply with the Court's *Remand Order*. As discussed above, pursuant to the Court's *Remand Order*, Commerce: (1) reconsidered its use of the 10.54 percent rate as AFA; and (2) explained why, given the circumstances of this case, the 10.54 percent AFA rate is both reasonable and appropriate under section 776(d) of the Act.

---

[15] *See* Draft Results of Redetermination Pursuant to Court Remand, Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China, *Yama Ribbons and Bows Co., v. United States*, Court No. 20-00059, Slip. Op. 22-157 (CIT December 23, 2022), dated January 25, 2023 (Draft Results of Redetermination).
[16] *See* Yama's Letter, "Comments on Draft Remand Redetermination," dated January 31, 2023.
[17] *Id*. at 3.

7

Moreover, as noted above, because we found that the GOC's failure to provide a period-specific response prevented Commerce from analyzing the function of the Export Buyer's Credit program,[18] we found no basis to determine that this situation warranted the application of a different rate than that derived from our CVD AFA hierarchy. In addition, we noted that the Federal Circuit's holding in *Fine Furniture* that a government's failure to cooperate is a legitimate basis to apply an adverse rate that, nonetheless, affects a cooperating respondent is applicable to the facts of this case. Therefore, we find that the 10.54 percent AFA rate derived from the CVD AFA hierarchy does not unreasonably penalize Yama as a cooperative respondent.

We also disagree with Yama that Commerce has not provided evidence to justify its application of the 10.54 percent rate to the Export Buyer's Credit program. Commerce, in the Draft Results of Redetermination, provided additional explanation of its CVD AFA hierarchy for administrative reviews, clarifying for the Court that this hierarchy actually consists of four steps and that only the fourth step requires that Commerce use a program available to the industry in the proceeding. Because we did not select a rate pursuant to the fourth step of the CVD AFA hierarchy, Commerce is not required to determine whether the rate selected as AFA is from a program that is available to the narrow woven ribbons industry in China. Nonetheless, we also explained that the preferential policy lending program in *Coated Paper from China* is similar to the Export Buyer's Credit program based on the treatment of the benefit, because the credits function as short-term or medium-term loans. Consequently, because Commerce appropriately applied its CVD AFA hierarchy to select the 10.54 percent rate for the Export Buyer's Credit

---

[18] *See Final Results* IDM at Comment 2.

program in accordance with section 776(d)(1)(A) of the Act, we continue to find that this rate is reasonable to use as AFA in the calculation of Yama's overall subsidy rate for this review.

## V.     FINAL RESULTS OF REDETERMINATION

Consistent with the instructions of the Court, we have continued to use the same approach in the final results of redetermination.  As a result of our redetermination, we continue to apply the 10.54 percent subsidy rate as AFA for the Export Buyer's Credit program.  Thus, we made no changes to Yama's overall subsidy rate presented in the *Final Results* (*i.e.*, 31.87 percent).

2/14/2023

X 

Signed by: LISA WANG

Lisa Wang
 Assistant Secretary
  for Enforcement and Compliance