IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TOMTHY J. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| YAMA RIBBONS AND BOWS CO., LTD., | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) Court No.: 20-00059 |
| Defendant, | ) |
| and | ) |
| BERWICK OFFRAY, LLC, | ) |
| Defendant-Intervenor. | ) |

**<u>DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION</u>**

Defendant, the United States, respectfully submits this response to the comments of plaintiff Yama Ribbons and Bows Co., Ltd. (Yama), Yama Comments Opposing Remand Redetermination (Yama Cmts.), ECF No. 50, concerning the United States Department of Commerce's (Commerce) final results of redetermination filed in accordance with this Court's decision and remand order in *Yama Ribbons and Bows Co. v. United States*, 611 F. Supp. 3d 1394 (Ct. Int'l Trade 2022) (Remand Opinion). *See* Final Results of Redetermination Pursuant to Court Remand, Feb. 15, 2023 (Remand Redetermination), ECF No. 48, P.R.R. 4.[1]

The Court should sustain Commerce's remand redetermination because it complies with the remand opinion, and it is supported by substantial evidence and otherwise in accordance with

---

[1] Citations to public documents from the administrative record are identified as "P.R. __" and documents from the administrative remand record are identified as "P.R.R. __".

law.

## BACKGROUND

I. **Administrative Determination Under Review**

The administrative determination under review is the final results of the 2017 administrative review of the countervailing duty order covering narrow woven ribbons with woven selvedge from the People's Republic of China. *See Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China*, 85 Fed. Reg. 10, 653 (Dep't of Commerce Feb. 25, 2020) (Final Results) (P.R. 176), and accompanying Issues and Decision Memorandum (IDM) (P.R. 171). The period of review is January 1, 2017, through December 31, 2017.

In the final results, Commerce used an adverse inference in selecting from the facts otherwise available on the record in countervailing the Export Buyer's Credit Program. IDM at 26; *see also Yama Ribbons*, 611 F. Supp. 3d at 1398. Commerce determined the Chinese government had failed to act to the best of its ability because it had failed to respond to Commerce's questionnaire for the relevant period of review and had informed Commerce that it would not participate in the review. IDM at 20. Without this information, Commerce explained that it was unable to analyze how the program functioned. *Id*. Accordingly, Commerce determined that it was unable to make a determination of non-use based only on Yama's claims of non-use of the program. *Id*. Thus, Commerce determined, based on facts available with an adverse inference, that Yama had used and benefitted from the program. *Id*.

In determining an adverse rate for the Export Buyer's Credit Program, Commerce selected a 10.54 percent rate pursuant to its established hierarchy in applying facts available with an adverse inference in administrative reviews of countervailing duty orders. *Id*. at 27.

Commerce also determined pursuant to facts available with an adverse inference that Yama's suppliers of synthetic yarn and caustic soda were authorities within the meaning of 19 U.S.C. § 1677(5)(B). *Id.* at 10.

## II.     The Court's Remand Order

On December 23, 2022, the Court sustained, in part, and remanded, in part, Commerce's final results, holding that: (1) Commerce's use of facts available with an adverse inference in determining that the operations of Yama's suppliers of synthetic yarn and caustic soda were "authorities" within the meaning of 19 U.S.C. § 1677(5)(B) was lawful; (2) Commerce was within its authority in using an adverse inference that Yama had benefitted from the Export Buyer's Credit Program; but (3) the record did not contain sufficient evidence to support the application of the 10.54 percent subsidy rate as an adverse rate in light of Commerce's stated adverse inference rate hierarchy. *Yama Ribbons*, 611 F. Supp. 3d at 1401-05.

Regarding the adverse inference rate, the Court held that Commerce's administrative determination did not explain how the 10.54 percent subsidy rate from the program entitled "Preferential Lending to the Coated Paper Industry" was available to the woven ribbons industry in China in accordance with Commerce's stated method of choosing a rate as an adverse inference in this review. *Id.* at 1404. On remand, the Court instructed Commerce to reconsider its use of the 10.54 percent rate as an adverse rate and explain why the rate it decides to use is appropriate under 19 U.S.C. § 1677e, given that an unreasonable rate could unduly prejudice Yama, an interested party that was fully cooperative during the review. *Id.* at 1403.

## III.    Remand Redetermination

On February 14, 2023, Commerce issued its remand redetermination. On remand, Commerce reconsidered its selection of the 10.54 percent subsidy rate selected as the adverse

rate. Remand Redetermination at 3-9. Commerce clarified that its countervailing duty adverse inference rate hierarchy was misstated in the final results and continued to select the 10.54 percent rate pursuant to the correct articulation of its hierarchy. *Id*. at 3-5. Further, Commerce explained how the selected rate is not punitive as applied to Yama. *Id*. at 5-9.

In the underlying administrative review, Commerce had described its methodology for selecting a countervailing duty rate with adverse inference as compromising three steps. *See* IDM at 27. Namely, Commerce explained that when selecting an adverse facts available rate in a countervailing duty administrative review: (1) it first determines if there is an identical program from any segment of the proceeding and uses the highest calculated rate for the identical program (excluding *de minimis* rates); (2) if no such identical program exists, Commerce then determines if there is a similar/comparable program (based on the treatment of the benefit) within the same proceeding and applies the highest calculated rate for the similar/comparable program, excluding *de minimis* rates; and lastly, (3) where there is no comparable program, Commerce applies the highest calculated rate from any non-company specific program in any countervailing duty case involving the same country, but it does not use a rate from a program if the industry in the proceeding cannot use that program. *Id*.

On remand, Commerce explained that its countervailing duty facts available with an adverse inference hierarchy is more accurately described as having *four* steps. Remand Redetermination at 3. "Under the first step, Commerce applies the highest non-*de minimis* rate calculated for the identical program in any segment of the same proceeding," but "{i}f there is no identical program match within the same proceeding, or if the rate is *de minimis*, under step two of the hierarchy, Commerce applies the highest non-*de minimis* rate calculated for a similar program within any segment of the same proceeding." *Id*. "If there is no non-*de minimis* rate

calculated for a similar program within the same proceeding, under step three of the hierarchy, Commerce applies the highest non-*de minimis* rate calculated for an identical or similar program in another CVD proceeding involving the same country." *Id.* at 3-4. Finally, with step four, "if there is no non-*de minimis* rate calculated for an identical or similar program in another CVD proceeding involving the same country, . . . Commerce applies the highest calculated rate for any program from the same country that the industry subject to the review could have used." *Id.* at 4.

Under steps one and two, Commerce explained it had not previously calculated an above *de minimis* rate for this program or a similar program within this proceeding, *i.e.*, countervailing duty administrative reviews or the investigation of woven ribbons from China. *See id.*; IDM at 27. Thus, pursuant to step three of Commerce's four-step hierarchy, if there is no non-*de minimis* rate calculated for a similar program within the same proceeding, Commerce applies the highest non-*de minimis* rate calculated for an identical or similar program in another countervailing duty proceeding involving the same country. *Id.*

Accordingly, because Commerce had not previously calculated an above-*de minimis* rate for the Export Buyer's Credit Program in this proceeding and found no similar program within this proceeding without a *de minimis* rate, consistent with its hierarchy, Commerce relied on the rate determined for a comparable program in another countervailing duty proceeding involving China. *See* Remand Redetermination at 4; IDM at 27. In other words, Commerce determined that the highest calculated rate for a comparable lending program is the 10.54 percent rate calculated for the Preferential Lending to the Coated Paper Industry Program in *Coated Paper from China*. Remand Redetermination at 4 (citing *Certain Coated Paper Suitable for High-Quality Print Graphics Using Sheet-Fed Presses from the People's Republic of China*, 75 Fed. Reg. 70,201 (Dep't Commerce Nov. 17, 2010) (final am. CVD determ.)). Because Commerce

did not select the 10.54 percent rate pursuant to the fourth step of the hierarchy, Commerce explained that it did not consider whether this program is available to the narrow woven ribbons industry in China. *Id.* at 5.

Moreover, Commerce explained that, in "evaluating the situation that resulted in the use of {adverse inference}, namely that the {government of China's} failure to provide a period-specific response prevented Commerce from analyzing the function of the Export Buyer's Credit program or asking further questions regarding the program," Commerce found "no basis to determine that this situation warrants the application of a different rate than that derived from {its{ hierarchy." *Id.* at 6.

## ARGUMENT

### I.  Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Accordingly, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

### II.  Commerce's Selection Of The 10.54 Percent Export Buyer's Credit Program Adverse Inference Rate Complies With The Remand Order

The Court instructed Commerce to reconsider its use of the 10.54 percent rate and explain why the rate it decides to use is appropriate under 19 U.S.C. § 1677e(b), and is consistent

6

with the purpose of that statute's aim of encouraging parties to act to the best of their ability notwithstanding Yama's cooperation during the review. *See Yama Ribbons*, 611 F. Supp. 3d at 1401-05. Consistent with the remand order, Commerce reconsidered the 10.54 percent rate in light of its clarified countervailing duty adverse inference hierarchy and explained why the 10.54 percent rate was appropriate under 19 U.S.C. § 1677e(b) and is consistent with the purpose of that statute. Remand Redetermination at 3-9. Accordingly, Commerce complied with the Court's remand order.

      **A.**      **Commerce Clarified That Its Selection Of The 10.54 Percent Rate Did Not Require That The Rate Be Available To The Woven Ribbons Industry**

In the remand redetermination, Commerce clarified that the steps in its established countervailing duty rate adverse inference hierarchy consists of four, not three, steps as misstated in the final results. *See* Remand Redetermination at 3-4 (citations omitted). Further, Commerce explained that, consistent with its correctly stated four-step hierarchy, because it had not previously calculated an above-*de minimis* rate for the Export Buyer's Credit Program in this proceeding and found no similar program within this proceeding without a *de minimis* rate, Commerce relied on the rate determined for a similar program in another countervailing duty proceeding involving China. *Id.* at 4. Commerce further explained that based on the four-step hierarchy, *only* the fourth step requires that Commerce use a program available to the industry in the proceeding. *Id.* at 4-5. Thus, it did not examine whether the Preferential Lending to the Coated Paper Industry Program is available to the woven ribbons industry.

When Commerce selects a similar program, it looks for a program with the same type of benefit. For example, it selects a loan program to establish the rate for another loan program, or it selects a grant program to establish the rate for another grant program. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of*

7

*China*, 80 Fed. Reg. 41,003 (Dep't of Commerce July 14, 2015), and accompanying IDM at 14, 44; *Large Residential Washers from the Republic of Korea*, 80 Fed. Reg. 55,336 (Dep't of Commerce Sept. 15, 2015), and accompanying IDM at 5.

In this case, Commerce determined that the highest calculated rate for a similar lending program in any countervailing duty proceeding involving China is the 10.54 percent rate calculated for the Preferential Lending to the Coated Paper Industry Program in *Coated Paper from China*. Remand Redetermination at 4. Consistent with its practice, Commerce determined this lending program to be similar to the Export Buyer's Credit Program based on the treatment of the benefit because the credits function as short-term or medium-term loans. *Id*.

Yama does not challenge the lawfulness of Commerce's four-step hierarchy, nor does it argue that Commerce improperly departed from its hierarchy in selecting the 10.54 percent rate pursuant to step three of the hierarchy. *See* Yama Cmnts. at 1-3. Rather, Yama argues that Commerce's determination that the Preferential Lending to the Coated Paper Industry Program is similar to the Export Buyer's Credit Program is not supported by substantial evidence. *Id*. at 2. This argument is meritless because the record reflects that both programs are lending programs.

To wit, although Commerce was prevented from fully analyzing the Export Buyer's Credit Program as a result of the Chinese government's lack of cooperation in this review, Commerce explained in its final results that the Export Buyer's Credit Program provides loan support through export buyer's credits. *See* IDM at 18 (citing Commerce's first investigation of the Export Buyer's Credit Program in 2012 and conclusion that credits provided under this program are "medium- and long-term loans, and have preferential, low interest rates"); Remand Redetermination at 4. In addition, the final results of *Coated Paper from China* describe the Preferential Lending to the Coated Paper Industry Program as a loan program from policy banks,

8

as the title of the program also reasonably suggests. *See Certain Coated Paper Suitable For High-Quality Print Graphics Using Sheet-Fed Presses From the People's Republic of China*, 75 Fed. Reg. 10,774, 10,782-83 (Dep't of Commerce Mar. 9, 2010) (prelim. CVD determ.) (describing the Preferential Lending to the Coated Paper Industry Program as a program that provides loans to respondents from policy banks and state-owned commercial banks). Thus, Commerce's determination that both programs are similar because *both* provide loans from policy banks is supported by substantial evidence. *See Ozdemir Boru San. Ve Tic. Ltd. Sti. v. United States*, 273 F. Supp.3 d 1225, 1246 (Ct. Int'l Trade 2017) ("it was well within Commerce's discretion to conclude that where the two programs are both tax programs, a sufficient nexus of similarity was established."); *Solarworld Ams., Inc. v. United States*, 182 F. Supp. 3d 1372, 1377-78 n.8 (Ct Int'l Trade 2016) (holding that Commerce's logic in considering two programs similar was "reasonably discernible because both loan programs perform similar functions in support of Chinese industry by offering lower interest rates on loans than would otherwise be available to these companies.").

Accordingly, the Court should sustain Commerce's remand redetermination because it complies with the Court's remand order and is supported by substantial evidence.

### B. Commerce's Selection Of The 10.54 Percent Adverse Inference Rate Is In Accordance With Law

Commerce's selection of the 10.54 percent rate is also in accordance with law. Contrary to Yama's assertion that Commerce applied "the same unsupported rationale as before to justify the use of the punitive rate to Yama Ribbons," Yama Cmnts. at 3, Commerce further explained why it was in accordance with law to assign Yama the 10.54 percent rate. *See* Remand Redetermination at 5-6. Pursuant to 19 U.S.C. § 1677e(d)(2), when selecting among possible adverse inference rates, Commerce may apply "the highest such rate … based on the evaluation

9

by the administering authority of the situation that resulted in the administering authority using an adverse inference in selecting among the facts otherwise available." *Id.*  In this case, because the Chinese government had failed to provide a period-specific response and prevented Commerce from analyzing the function of the Export Buyer's Credit Program, Commerce's application of the hierarchy is in accordance with law.  *Id.* at 6.

Although Yama argues that the rate is punitive, Yama Cmnts. at 3, Commerce explained that the Chinese government's "failure to cooperate in this case is a legitimate basis to apply an adverse rate that, nonetheless, affects a cooperating respondent."  Remand Redetermination at 6; *see Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014) ("{a}lthough it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").  Here, although a respondent like Yama may cooperate, Commerce's application of the 10.54 percent rate is "a remedy that collaterally reaches {Yama and} has the potential to encourage the government of China to cooperate so as not to hurt its overall industry." *Fine Furniture*, 748 F.3d at 1373; *see also RZBC Grp. Shareholding Co., Ltd. v. United States*, 222 F. Supp. 3d 1196, 1206 (Ct. Int'l Trade 2017) (rejecting plaintiff's argument that a 10.54 percent adverse inference rate is excessively punitive); *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1348 (Fed. Cir. 2016) (holding that deterrence is a proper consideration in applying facts available with an adverse inference).

## CONCLUSION

For these reasons, this Court should sustain Commerce's remand redetermination, and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
U.S. Dept. of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7571
E-mail: Kara.M.Westercamp@usdoj.gov

Attorneys for Defendant

OF COUNSEL:
Rachel Bogdan
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

April 17, 2023

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief complies with the appropriate word-count limitation. According to the word-count function of the software used to prepare this brief, the brief contains 2,902 words.

s/ Kara M. Westercamp  
Kara M. Westercamp

THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TOMTHY J. STANCEU, SENIOR JUDGE

| | |
|---|---|
| YAMA RIBBONS AND BOWS CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Court No.: 20-00059 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| BERWICK OFFRAY, LLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |

Upon consideration of plaintiff Yama Ribbons and Bows Co., Ltd. comments regarding the United States Department of Commerce's (Commerce) remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's remand results are sustained.

_____
Senior Judge

Dated: _____
       New York, New York