C-570-953
Remand: Slip Op. 24-43
Court No. 20-00059
POR: 1/1/2017 – 12/31/2017
**Public Document**
E&C/OIX: AKM

***Yama Ribbons and Bows Co. v. United States*,**
**Court No. 20-00059, Slip Op. 24-43 (CIT April 10, 2024)**
**Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China**

FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the second remand order of the U.S. Court of International Trade (the Court) in *Yama Ribbons and Bows Co. v. United States*, Court No. 20-00059, Slip Op. 24-43 (CIT April 10, 2024) (*Yama Ribbons II*). This action arises out of the final results of the 2017 administrative review of narrow woven ribbons with woven selvedge from the People's Republic of China (China).[1] In *Yama Ribbons II*, the Court remanded Commerce's first remand redetermination regarding Commerce's adverse facts available (AFA) rate selection for the Export Buyer's Credit Program (EBCP).[2] As discussed below, pursuant to the Court's second remand order in *Yama Ribbons II*, we have reconsidered our selection of the 10.54 percent subsidy rate calculated in *Coated Paper from China* for the Preferential Policy Lending program to the coated paper industry[3] as the AFA rate for the EBCP and have instead selected the 0.87

---

[1] *See Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017*, 85 FR 10653 (February 25, 2020) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Final Results of Redetermination Pursuant to Court Remand, Yama Ribbons and Bows Co., v. United States*, Court No. 20-00059, Slip Op. 22-157 (CIT December 23, 2022), dated February 14, 2023 (*First Remand Redetermination*), available at https://access.trade.gov/resources/remands/22-157.pdf.
[3] *See Certain Coated Paper Suitable for High-Quality Print Graphics Using Sheet Fed Presses from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 FR 59212 (September 27, 2010) (*Coated Paper from China*), and accompanying IDM at 12.

percent subsidy rate calculated for the Export Seller's Credit program (ESCP) in *Chloro Isos from China*.[4]

## II. BACKGROUND

On February 25, 2020, Commerce published its *Final Results*.[5] In the *Final Results*, we found that the use of AFA was warranted in determining the countervailability of the EBCP because the Government of China (GOC) failed to cooperate to the best of its ability in response to our requests for information and the record for the EBCP was incomplete.[6] As AFA, Commerce determined that the EBCP met the financial contribution and specificity requirements of the Tariff Act of 1930, as amended (the Act), and that Yama Ribbons and Bows Co. (Yama) used the EBCP. Consistent with our countervailing duty (CVD) AFA rate selection hierarchy and section 776(d) of the Act, we selected the highest calculated rate for a similar program in another CVD China proceeding (*i.e.*, 10.54 percent for the preferential policy lending program in *Coated Paper from China*) as the AFA subsidy rate for the EBCP.[7] Following the publication of the *Final Results*, Yama challenged Commerce's application of AFA to the EBCP and selection of the 10.54 percent AFA subsidy rate, which Yama claimed was extremely adverse, punitive, and not related to exports or the industry or connected to the program.[8]

On December 23, 2022, in its first remand order, the Court held that Commerce was within its authority in using an adverse inference that Yama benefited from the EBCP, but that

---

[4] *See Countervailing Duty Investigation of Chlorinated Isocyanurates from the People's Republic of China: Preliminary Determination and Alignment of Final Determination With Final Antidumping Determination*, 79 FR 10097 (February 24, 2014), and accompanying Preliminary Decision Memorandum at 15, unchanged in *Chlorinated Isocyanurates from the People's Republic of China: Final Affirmative Countervailing Duty Determination; 2012*, 79 FR 56560 (September 22, 2014), and accompanying IDM at 14 (collectively, *Chloro Isos from China*).
[5] *See Final Results*, 85 FR at 10653.
[6] *See Final Results* IDM at Comment 2.
[7] *Id.*
[8] *See Yama Ribbons II*, Court No. 20-00059, Slip Op. 24-43 at 16.

the record did not support the selection of the 10.54 percent AFA subsidy rate.[9] The Court instructed Commerce to: (1) reconsider its use of the 10.54 AFA rate; and (2) explain why the rate it uses is appropriate under section 776(d) of the Act, and is consistent with the statutory purpose to encourage parties to act to the best of their ability to comply with Commerce's requests for information rather than to impose punitive rates.[10] The Court stated that Commerce must explain, specifically, why it considers the rate it chooses to be appropriate for the statutory purpose in the special case here, where an unreasonably high rate could unduly prejudice Yama, an interested party that was fully cooperative during the review.[11]

In the *First Remand Redetermination*, Commerce explained that, in selecting the 10.54 percent AFA rate, it had relied on the highest calculated rate for a similar program in another CVD proceeding involving China pursuant to step three of Commerce's four-step CVD AFA rate selection hierarchy.[12] Accordingly, Commerce provided further explanation of why the 10.54 percent subsidy rate calculated for the preferential policy lending program in *Coated Paper from China* was appropriate to use as AFA for the EBCP in this case.[13] Specifically, Commerce explained that the treatment of the benefit for both programs was similar because the credits function as short-term or medium-term loans.[14]

---

[9] *See Yama Ribbons & Bows Co. v. United States*, 611 F. Supp. 3d 1394, 1401 (CIT December 23, 2022) (*Yama Ribbons I*) (holding that, under the CVD AFA rate selection hierarchy as articulated by Commerce, the selection of the 10.54 percent AFA rate for the EBCP is unsupported by the record because Commerce pointed to no evidence that the preferential policy lending program benefiting the coated paper industry was available to the ribbons industry).
[10] *See Yama Ribbons I*, 611 F. Supp. 3d at 1403.
[11] *Id*.
[12] *See First Remand Redetermination* at 4 (referencing the 10.54 percent rate from *Coated Paper from China* for the "preferential lending to the coated paper industry" program) and 4-5 (clarifying the explanation of Commerce's CVD AFA hierarchy and specifying that only the fourth step of the CVD AFA hierarchy requires that Commerce use as AFA a rate from a program which is available to the industry in the proceeding).
[13] *Id*. at 1 and 4-5.
[14] *Id*. at 5 (citing *Final Results* IDM at Comment 2).

On April 10, 2024, in its second remand order, the Court held that the underlying administrative record does not support Commerce's finding, under step three of its CVD AFA hierarchy, that the preferential policy lending program in *Coated Paper from China* is similar to the EBCP.[15] The Court stated that the evidentiary basis for the factual findings in *Coated Paper from China*, on which Commerce relied to make its similarity determination, is not on the record of the underlying review. Moreover, the Court held that *Coated Paper from China* does not indicate that the terms of the credits provided under a preferential coated paper lending program were in the form of short-term or medium-term loans, as Commerce found.[16] The Court noted that, even if *Coated Paper from China* did contain information that the preferential policy lending program provided these kinds of loans, the evidence is not available on the underlying record for the Court's review.[17] Thus, the Court held that our similarity determination is not based on evidence present on the record of this administrative review. As a result, the Court remanded for reconsideration Commerce's decision to use the preferential policy lending program in *Coated Paper from China* as the basis for an AFA subsidy rate for the EBCP in this case. In addition, the Court deferred consideration of whether Commerce failed in its obligation to justify the 10.54 percent AFA rate as appropriate in the "special case presented here, in which an unreasonably high rate could unduly prejudice {Yama}."[18]

### III. ANALYSIS

In accordance with the Court's second remand order in *Yama Ribbons II*, we reconsidered selection of the rate calculated for the preferential policy lending program in *Coated Paper from*

---

[15] *See Yama Ribbons II*, Court No. 20-00059, Slip Op. 24-43 at 16-19.
[16] *Id.* at 16-17 (citing *Coated Paper from China* IDM at 12).
[17] *Id.*
[18] *Id.* at 19.

4

*China* as AFA for the EBCP.[19] Based on the Court's instructions, we selected another rate as AFA under step three of Commerce's four-step CVD AFA rate selection hierarchy.

Under step three of the CVD AFA hierarchy, Commerce applies the highest non-*de minimis* rate calculated for an identical or similar program in another CVD proceeding involving the same country.[20] When Commerce selects a similar program, we look for a program with the same type of benefit.[21] Accordingly, on remand, for the EBCP, we have selected as AFA the 0.87 percent rate calculated for the ESCP in *Chloro Isos from China* as the highest non-*de minimis* rate calculated for a similar program in another CVD China proceeding.[22]

Upon reexamination of our determination and the review record, we find that the ESCP and EBCP are similar because both programs confer the same type of benefit. Specifically, both the ESCP and EBCP are subsidized loan programs administered by the Export-Import Bank of China to support Chinese industry and trade of merchandise between China and foreign countries.[23] This program similarity finding is supported by record evidence. In response to a questionnaire during the underlying review, the GOC provided the 2016 Annual Report of the Export-Import Bank of China, which lists the ESCP and EBCP as foreign trade loan programs to support the trade of merchandise between China and foreign countries or regions.[24] Moreover,

---

[19] *See Yama Ribbons II*, Court No. 20-00059, Slip Op. 24-43 at 19.
[20] *See First Remand Redetermination* at 4.
[21] Commerce has codified its practice that a program is considered similar or comparable under the CVD AFA hierarchy based on Commerce's treatment of the benefit. *See* 19 CFR 351.308(j)(3)(ii); and *Regulations Improving and Strengthening the Enforcement of Trade Remedies Through the Administration of Antidumping and Countervailing Duty Laws*, 89 FR 20766, 20781 (March 25, 2024). We note that Commerce assigned the 10.54 percent AFA rate to the EBCP in the underlying administrative review pursuant to this practice.
[22] *See Chloro Isos from China* IDM at 15.
[23] *See* GOC's Letter, "GOC Questionnaire Response," dated February 19, 2019 (GOC Questionnaire Response), at Exhibit D, Part 27 (listing the ESCP and EBCP as foreign trade loans which are provided to the Export-Import Bank of China's clients to support trade, *etc*.); *see also Final Results* IDM at Comment 2; *Chloro Isos from China* IDM at 14-15; *Final Results* IDM at Comment 2.
[24] *See* GOC Questionnaire Response at Exhibit D, Part 27.

the Court has upheld Commerce's finding that ESCP and EBCP are similar for the purposes of the CVD AFA hierarchy.[25]

Therefore, in these final results of redetermination, in accordance with the Court's second remand order, because the ESCP is similar to the EBCP based on evidence on the record of the underlying administrative review, we are selecting the non-*de minimis* rate calculated for the ESCP in *Chloro Isos from China* (*i.e.*, 0.87 percent) as AFA for the EBCP under step three of Commerce's CVD AFA hierarchy and section 776(d) of the Act.

## IV.   INTERESTED PARTY COMMENTS

On May 28, 2024, Commerce released the draft results of redetermination to all interested parties and invited parties to comment.[26]  No parties submitted comments.

## V.   FINAL RESULTS OF REDETERMINATION

Consistent with the instructions of the Court, on remand, we have reconsidered our selection of the AFA subsidy rate for the EBCP.  As a result of our redetermination, in accordance with the Court's opinion and order, we have selected the 0.87 percent subsidy rate for the ESCP calculated in *Chloro Isos from China* as the AFA rate for the EBCP.  Thus, Yama's overall subsidy rate for the 2017 period of review is 22.20 percent.  Should the Court affirm these final results of redetermination, we intend to publish a *Timken Notice* with the amended

---

[25] *See, e.g.*, *Bio-Lab, Inc. v. United States*, 487 F. Supp. 3d 1291, 1307 (CIT 2020) (sustaining Commerce's similarity finding regarding ESCP and EBCP for the purposes of applying its CVD AFA hierarchy); and *Clearon Corp. v. United States*, 359 F. Supp. 3d 1344, 1361-62 (CIT 2019) (upholding Commerce's finding that ESCP and EBCP are similar under its CVD AFA rate hierarchy).
[26] *See* Draft Results of Redetermination Pursuant to Court Remand, *Yama Ribbons and Bows Co. v. United States*, Court No. 20-00059, Slip Op. 24-43 (CIT April 10, 2024), dated May 28, 2024.

final results in the *Federal Register*, and issue appropriate instructions to the U.S. Customs and Border Protection, consistent with the discussion above.[27]

6/10/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[27] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990).